UNITED STATES of America,

v.

**Michael FORDE, Defendant.**

**No. 08 Cr. 828(VM).**

United States District Court, S.D. New York.

Nov. 23, 2010.

Lisa R. Zornberg, Mark D. Lanpher, U.S. Attorney's Office, New York, NY, for United States of America.

Andrew McCutcheon Lankler, James Kim, Lankler & Carragher, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

On July 28, 2010, defendant Michael Forde ("Forde") pled guilty to one count of racketeering conspiracy and one count of committing acts of racketeering in violation of 18 U.S.C. § 1962(c) and (d). The Presentence Investigation Report ("PSR") found that under the United States Sentencing Guidelines, the range of imprisonment corresponding to Forde's total offense level and criminal history is 108 to 135 months. Forde requested a sentence below the recommended Guidelines minimum, while the Government urged the Court to sentence Forde at the top of the Guidelines range. At Forde's sentencing on November 19, 2010, as further elaborated upon in the Statement of the Court which is attached hereto and incorporated herein, the Court denied Forde's request for a sentence below the Guidelines.

The Court adopted the findings of fact and Guidelines analysis set forth in the PSR, granted the Government's request, and sentenced Forde to serve a term of incarceration of 132 months and to pay a fine of $50,000.00.

### ORDER

For the reasons stated above, it is hereby

**ORDERED** that the request of defendant Michael Forde ("Forde") herein to be sentenced below the range recommended by the United States Sentencing Guidelines is DENIED.

**SO ORDERED.**

### STATEMENT BY THE COURT REGARDING DEFENDANT'S SENTENCE NOVEMBER 19, 2010

The sentencing of Michael Forde illustrates a basic principle of justice: relative gradations in crime that test the calibrations of corresponding punishment. Among the many lessons that may be learned from the events underlying this case is a related proposition. Borrowing a page from Tolstoy, all ordinary crimes hurt in similar ways, but every extraordinary crime harms in its own extraordinary way. In what reflects a truism of our justice system, when a crime does rise to exceptional proportions, the penalties imposed for it should correspond. This task, the essence of judging, challenges language to make distinctions among criminal actions, and societal reactions to draw the fine lines that words define.

Bringing these thoughts home to this courtroom, this proceeding records another episode of a familiar story heard often in courtrooms across the country, a drama that unfolds in the style of tragedy: the fall from grace of a man who was once a powerful public figure; the head of a large labor organization in a vital industry of our society; a leader elected by peers and entrusted by them, individually with safeguarding some of the things that matter most dearly to them—their livelihoods and well-being, the daily wages they earned, the benefits and pensions that ensured

their futures—and also collectively with strengthening the labor organization dedicated to protect those interests.

Here, as is typical as the storyline plays out, events begin with trust and lofty hope and end in shameful betrayal.

These cases are legion, and their tragic figures encompass leaders of the whole spectrum of our society, from government, labor and industry, and other fields of human endeavor. What distinguishes Mr. Forde's example from some of the more common cases is an order of magnitude. Mr. Forde's offense does not represent merely another instance of a model citizen whose otherwise exemplary life once took a wrong path and then went astray. Rather, the particulars of his case stand out, striking by the duration and depth of his betrayal, by the multitude of people he injured, by the vast amounts of time and resources and rebuilding that will be necessary to restore the broken lives and cleanse the shame Mr. Forde has left behind in the wake of his crimes.

The United States Sentencing Guidelines endeavor to account for cases that present exceptional or unique circumstances, and offer judges the wisdom and guidance of accumulated experience to perform this most trying task. Generally, they spell out the considerations courts should weigh, this advice expressed both objectively by descriptive language such as "aggravating factors" and "of a kind, or to a degree" not considered in the Guidelines, and also numerally, by formulaic point enhancements when the offense conduct is particularly serious. However, the Guidelines' neutral terms as articulated in measured legal parlance provide no specific words or metric by which courts can measure or express the higher peaks of depravity or plumb the lowest forms of baseness that criminal behavior takes in the extraordinary cases.

Here, for example, what language is graphic enough to capture the gravity in all its dimensions, the nuanced and the rank, that encompass the corruption evidenced in Mr. Forde's conduct? To cite just a few of its particulars:

- Mr. Forde served as the highest ranking executive of the carpenters' union, which counts over 20,000 members and includes the largest locals of one of the leading labor organizations in the country.

- Over a course of fifteen years as a high-level union official he took bribes worth hundreds of thousands of dollars from corrupt contractors, whom in turn he enabled, in violation of collective bargaining agreements, to pay off shop stewards and hire non-union works—at barely living wages and with no benefits or job security. These corrupt practices of course took away jobs from union members who had paid membership dues, dues that paid Mr. Forde's salary to secure the benefits of those jobs and employment security for his members.

- The losses to the union's Benefit Funds, of which Mr. Forde served as chairman and most powerful trustee, by one account exceeds $18 million.

- Mr. Forde embezzled hundreds of thousands of dollars from the union's accounts to support a lifestyle of lavish personal expenses, extravagant luxuries paid for at the expense of his rank-and-file members, some of whom in a lifetime of honest work could not afford to pay for a fraction of what Mr. Forde stole and wasted from their funds.

- During most of the time Mr. Forde was engaged in these acts of corruption he and the union were subject to the terms of a judgment of this Court

enjoining the precise forms of unlawful conduct Mr. Forde was continuously committing, while vigorously representing to the Court that he was actively and in good faith fighting corruption and cleaning up the carpenters' union.

- He professed innocence and proclaimed vindication after previous trials on charges involving much of the same corrupt conduct he has admitted in his guilty plea before this Court, events for which the carpenter's union paid in excess of $500,000 in legal fees for Mr. Forde's defense.

- As severe punishment for individual carpenters caught working on non-union jobs for non-union wages, he voted for adoption and enforcement of rules to deny them health benefits for as much as six months, while at the very same time he was taking massive sums of money in bribes from contractors to enable them to build projects with non-union workers.

If the Sentencing Guidelines lack more precise language to define aggravated conduct, Mr. Forde's example easily fills in the gaps. Nothing about it suggests the ordinary, nothing routine or run-of-the-mill. To the contrary, everything that portrays his crime speaks of the higher regions of culpability, and the lowest circles of moral decay. What Mr. Forde's criminal behavior summons to any objective mind are words from a thesaurus of corruption, words like egregious, cynical, contemptible, sinister, shocking, perverse, hypocritical, downright wicked. When crime reaches these outer frontiers of depravity, as the Court is persuaded it does in this case, it elicits calls for recognition of the extraordinary, as it has done here today, in a corresponding sentence.

Accordingly, the Court is not persuaded that a sentence for Mr. Forde below the Guidelines is warranted. On the contrary, a sentence at the upper range of the Guidelines is appropriate and reasonable to properly achieve the objectives of sentencing.